ROPES & GRAY LLP
CHRISTOPHER G. GREEN
christopher.green@ropesgray.com
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone:    (617) 951-7000
Facsimile:    (617) 951-7050

ROCKY C. TSAI (CSB # 221452)
ANNE JOHNSON PALMER (CSB # 302235)
rocky.tsai@ropesgray.com
anne.johnsonpalmer@ropesgray.com
Three Embarcadero Center, Suite 300
San Francisco, California 94111-4006
Tel:    (415) 315-6300
Fax:    (415) 315-6350

Attorneys for Plaintiff
STUART L. PETERSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STUART L. PETERSON, | CASE NO. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | |
| AWJ GLOBAL SUSTAINABLE FUND, LP, | |
| Defendant. | |

COMPLAINT

**NATURE OF THIS ACTION**

1. This is an action for breach of contract and, in the alternative, unjust enrichment brought by Stuart L. Peterson ("Plaintiff") based on an erroneous distribution of $778,244.35 on April 26, 2012 to defendant AWJ Global Sustainable Fund, LP ("AWJ"), in connection with AWJ's investment in Artis Clean Tech Partners (Institutional), L.P. (the "Fund").

2. Plaintiff is the President and Portfolio Manager of Artis Capital Management, LP ("Artis"), the General Partner of the Fund.

3. After AWJ refused to return the windfall it received due to an administrative error, in direct violation of the Fund's limited partnership agreement (the "LP Agreement"), Plaintiff, himself also a limited partner investor in the Fund, forwent distributions otherwise owed to him so that the Fund's other investors would not experience any shortfall. Plaintiff brings this action after the Fund assigned to Plaintiff all of its right, title, and interest in all causes of action against AWJ or any other party arising out of the overpayment to AWJ.

4. AWJ is a Minneapolis, Minnesota-based "fund of funds" that makes investments in other hedge funds. AWJ is a limited partner investor in the Fund.

5. On April 26, 2012, Goldman Sachs (Cayman) Trust, Limited ("Goldman"), as the administrator for the Fund, distributed a payment to AWJ that, due to an administrative error by Goldman, overpaid AWJ in the amount of $778,244.35. Instead of being distributed to AWJ, the overpaid amount of $778,244.35 in funds should have been allocated to AWJ's so-called "Liquidating Capital Account" to be held by the Fund.

6. Under the terms of the LP Agreement, the funds allocated to AWJ's Liquidating Capital Account are not to be included in AWJ's regular Capital Account as a limited partner of the Fund, and specifically may not be withdrawn from the Fund by AWJ.

7. Under the terms of the LP Agreement, Artis had the sole discretion as the General Partner of the Fund to distribute AWJ's Liquidating Capital Account funds when it deems appropriate. Artis did not and does not authorize the erroneous overpayment by Goldman to AWJ of $778,244.35. Pursuant to the express terms of the LP Agreement, these funds were required to be returned to AWJ's Liquidating Capital Account in the Fund.

8. Plaintiff is informed and believes that AWJ was promptly notified by Goldman via email of Goldman's administrative error only three business days after AWJ's receipt of the $778,244.35 overpayment. Despite this notification, AWJ refused to return the overpaid funds.

9. On May 18, 2012, Artis send AWJ a formal letter on behalf of the Fund detailing the nature of the erroneous overpayment, explaining AWJ's contractual obligations under the LP Agreement to return the overpayment to the Fund, and requesting the immediate return of the full amount of the $778,244.35 overpayment. Despite this notification, AWJ refused to return the overpaid funds.

10. Despite receiving the overpayment of $778,244.35, AWJ still retained its interest in its Liquidating Capital Account in the Fund pursuant to the LP Agreement. By refusing to return the amounts distributed in error from the Fund's regular Capital Accounts, AWJ has misappropriated value and liquidity from the Fund and its investors, including Plaintiff.

11. To ensure there would be no harm to the Fund and the other investors, Plaintiff, himself a limited partner in the Fund, volunteered to have funds otherwise due to him from the Fund withheld to cover the deficit. And with Plaintiff having stepped forward to cover the shortfall resulting from AWJ's misappropriation, Artis, as general partner of the Fund, assigned all of the Fund's right, title and interest in and to any causes of actions against AWJ to Plaintiff.

12. Plaintiff is informed and believes that AWJ has refused to return the overpayment plus interest, not because it disagrees with the fact that Goldman's April 26, 2012 distribution was paid out to AWJ in error, but because AWJ is dissatisfied with Artis's decision to establish the Liquidating Capital Accounts for the Fund's investors in the first place.

13. AWJ, however, was fully notified in writing of the Liquidating Capital Account provisions of the LP Agreement in the fall of 2011, and yet expressed no objections to those terms.

14. By improperly withholding Fund amounts clearly distributed to it in error, AWJ has breached, and continues to breach, its obligations under the LP Agreement.

15. In addition to withholding the erroneously distributed Fund amounts, AWJ claims that it is owed $131,216.17 in audit holdbacks related to the 2012 audit with interest. However,

the result of the 2012 audit was confirmation by Artis's outside auditor Rothstein Kass ("Rothstein") that AWJ should <u>not</u> have received the $778,244.35 paid out in error by Goldman.

16. Plaintiff therefore brings this action seeking a judgment against AWJ providing for the immediate return by AWJ of all monies it owes to the Fund, for the payment by AWJ of all available pre-judgment and post-judgment interest on the improperly withheld funds, all damages according to proof resulting from AWJ's continuing withholding of monies belonging to the Fund in violation of the LP Agreement, and all available attorneys' fees and costs of suit incurred by Plaintiff in connection with this action, and providing for all other and further relief that the Court deems appropriate.

**THE PARTIES**

17. Plaintiff Stuart L. Peterson is a resident of California and President and Portfolio Manager of Artis.

18. Defendant AWJ is a Delaware limited partnership with its principal place of business at 222 South 9th Street, Suite 3035, Minneapolis, MN 55402.

**JURISDICTION AND VENUE**

19. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the matter in controversy exceeds the sum or value of $75,000. Plaintiff is a citizen of California and AWJ is a citizen of Delaware and of Minnesota.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district.

21. Jurisdiction and venue are further proper in this Court because this is an action for breach of the LP Agreement in which the parties expressly consent and specifically submit to the jurisdiction and venue of this Court with respect to any suit, action, or proceeding between or among any of the parties to the LP Agreement or their affiliates arising out of, relating to or in connection with the LP Agreement or the Fund.

**THE PRESENT CONTROVERSY**

**A.     AWJ Is Notified Of The Liquidating Capital Accounts**

22. On October 26, 2011, Artis sent a letter to all of the Fund's investors, including AWJ, providing notice specifically regarding certain restrictions on the investors' redemption requests with respect to the Fund's holdings in shares of a clean technology company called Kior, Inc. ("Kior").

23. As Artis explained in its October 26, 2011 letter to the Fund's investors, the Kior shares held by the Fund had certain contractual and legal restraints at the time that limited the shares' liquidity. Further, Artis explained to the Fund's investors that Artis had made the determination as the General Partner of the Fund that it was in the best interests of the Fund and its investors to segregate the Fund's holdings in Kior shares, such that investors who requested redemptions would receive both a cash distribution and an allocated interest in the Fund's Kior investment, thus allowing Artis to monetize the Fund's investment in Kior in a more optimal manner over time.

24. On November 14, 2011, Artis sent a follow-up letter to all of the Fund's investors, including AWJ, providing notice specifically regarding the amendment of the LP Agreement to provide for a "Liquidating Capital Account" with respect to the Fund's Kior shares for any investor that requested a withdrawal of capital from the Fund on or after December 31, 2011. A copy of the amended and restated LP Agreement was attached to the November 14, 2011 letter from Artis to AWJ, showing the changes to the agreement pertaining to the Liquidating Capital Accounts.

25. The LP Agreement as amended provides that, whenever an investor requests a withdrawal of capital from the Fund while the Fund holds Kior shares, the investor will receive both a distribution of an amount in cash and retention of an interest in a "Liquidating Capital Account" that will primarily track the Fund's profits and losses related to those Kior shares from the time they are allocated to the investor's Liquidating Capital Account to the time of the liquidation of those shares.

26. The LP Agreement as amended provides that, if and only if the Fund liquidates its holdings in Kior shares, Artis will at that time determine how to allocate those liquidated Kior shares among investors' Liquidating Capital Accounts and investors' regular Capital Accounts.

1 The LP Agreement specifically provides that investors are not permitted to withdraw the balances
2 of their Liquidating Capital Accounts.

3     27. AWJ expressed no objections in response to Artis's notices of October 26 and
4 November 14, 2011, pertaining to the Liquidating Capital Account provisions of the Fund and the
5 amended LP Agreement. In fact, far to the contrary, in communications AWJ directed to Artis
6 about other Artis funds in which AWJ had invested, AWJ acknowledged the fact that Kior shares
7 were being treated as illiquid in those funds. As set forth next, AWJ purported to raise such an
8 objection to Kior's treatment in the Fund only after it received the windfall of an overpayment
9 that resulted from an administrative error.

    **B.**     **The Fund Administrator Erroneously Distributes An Overpayment To AWJ In The Amount Of $778,244.35**

12     28. By letter to Artis dated January 30, 2012, AWJ requested a full redemption of
13 AWJ's interests in the Fund, effective as of March 31, 2012.

14     29. On January 31, 2012, the day after AWJ's redemption request, Artis sent AWJ a
15 spreadsheet, per AWJ's request, showing the status and value of the illiquid portion of AWJ's
16 investment in the Fund representing Kior shares.

17     30. In connection with the preparation of the net asset values (NAV) for the Fund,
18 Goldman as administrator to the Fund duly recorded the allocation of AWJ's pro rata share of the
19 illiquid Kior shares on the redemption date of March 31, 2012 ($778,244.35) into a Liquidating
20 Capital Account in the name of AWJ.

21     31. However, when Goldman provided funds to AWJ in response to AWJ's Fund
22 redemption request on April 26, 2012, due to an administrative oversight, Goldman included the
23 $778,244.35 that had been allocated to the Liquidated Capital Account and that should have been
24 excluded from the redemption pursuant to the operative terms of the LP Agreement.

    **C.**     **AWJ Is Promptly Notified Of The Erroneous Distribution, Yet Refused To Return The Overpayment To The Fund Where It Belongs**

32. Plaintiff is informed and believes, and thereupon alleges, that AWJ was informed of the mistaken $778,244.35 overpayment in an email from Goldman dated May 1, 2012. AWJ was thus promptly notified, only three business days after the date of the overpayment, that it was not entitled to retain the erroneously distributed funds.

33. On May 9, 2012, Goldman again contacted AWJ to reiterate that the distribution AWJ received from the Fund on April 26, 2012 included $778,244.35 that was distributed to AWJ by Goldman in error. Goldman explained to AWJ that this amount was equal in value to AWJ's Liquidating Capital Account, which had previously been established pursuant to the terms of the LP Agreement, with respect to the Fund's investment in illiquid shares of Kior.

34. As a follow-up to its conversation with AWJ, on May 9, 2012 Goldman re-sent to AWJ the November 14, 2011 notice and amended LP Agreement previously provided to AWJ by Artis, which specifically explained the establishment and operation of the Liquidating Capital Accounts for the Fund's Kior shares.

35. On May 18, 2012, Artis, through its counsel, sent AWJ a letter requesting the immediate return to the Fund of the $778,244.35 overpayment to AWJ.

**D. Plaintiff Steps Forward to Cover the Shortfall to the Fund Caused by AWJ**

36. Notwithstanding Artis's clear demands, AWJ continued to refuse to return the overpayment. To ensure there would be no harm to the Fund and the other investors, Plaintiff, himself a limited partner in the Fund, agreed to have funds otherwise due to him from the Fund withheld to cover the deficit.

37. At the close of 2012, Artis's outside auditor Rothstein completed the Fund's Financial Statements and Independent Auditors' Report (the "Audit Report") in which it found an amount receivable of $778,243 due from a limited partner, *i.e.* from AWJ. The Audit Report also noted that the amount receivable had been fully collateralized by an amount withheld by the Fund from an affiliated limited partner, meaning Plaintiff.

38. On September 17, 2013, Artis, through its counsel, again wrote to AWJ seeking return of the $778,244.35 overpayment to AWJ. Artis reiterated its prior request that those erroneously paid funds be returned and also enclosed the Audit Report and cited to the LP

1 Agreement's provision requiring prompt repayment upon a determination by Artis's auditors that an investor received more than the balance of its Capital Account. Pursuant to the LP Agreement, the $778,244.35 representing AWJ's pro rata share of the Fund's Kior holdings is not included in the balance of the Capital Account.

39. Effective June 30, 2014, Artis, as general partner of the Fund, assigned all of the Fund's right, title and interest in and to any causes of actions against AWJ to Plaintiff.

40. On October 3, 2014, Artis, acting on behalf of Plaintiff as assignee, through its counsel, yet again requested that AWJ return the funds it erroneously received and has wrongfully withheld for more than two years. Since AWJ had previously expressed hesitancy about its fiduciary duties with regard to the overpayment, Artis proposed arbitration to settle the parties' duties and resolve the dispute.

41. Despite the prompt and repeated communications from Artis and Goldman putting AWJ on ample notice that AWJ's withholding of the overpayment is unauthorized and improper; injurious to Artis, the Fund, and its investors; and in direct violation of the LP Agreement, AWJ has continually refused to return the overpayment to the Fund where it belongs.

42. AWJ has indicated that its refusal to return the overpayment is based ultimately on its dissatisfaction with Artis's decision as General Partner for the Fund to establish the Liquidating Capital Account structure, as set forth in the LP Agreement, with regard to the Fund's Kior investment. However, AWJ's disagreement with Artis's investment strategy does not constitute a legitimate excuse for AWJ's continuing breach of the LP Agreement through its improper retention of funds to which it is not entitled.

**D.  AWJ Demands Return Of Audit Holdback**

43. The LP Agreement allows Artis to hold back a portion of a limited partner's full redemption pending finalization of the Fund's financial statements and review by auditors. Thus, when AWJ received its redemption on April 26, 2012, including erroneously the $778,244.35 that should have remained in the Liquidating Capital Account, Goldman withheld on behalf of the fund $131,216.17.

44. The result of the 2012 audit by Rothstein was, among other things, a finding that a limited partner, AWJ, had been overpaid by, and thus owed to the Fund, $778,243.

45. Under the terms of the LP Agreement, a limited partner that is found by the auditors to have been paid more that the balance of its Capital Account is required to promptly repay in cash the amount overpaid. Despite being notified of the administrative error in May 2012 and of the results of the audit in a letter sent on September 17, 2013, AWJ has not repaid the excess amount that it received.

46. AWJ, through its counsel, has not only continued to refuse to return the $778,244.35 plus interest it has improperly withheld, but has demanded that Artis pay to AWJ the $131,216.17 that had been held back in connection with Rothstein's 2012 audit plus interest.

**COUNT ONE: BREACH OF CONTRACT**

47. Plaintiff hereby incorporates by reference paragraphs 1 through 46, above, as if fully set forth herein.

48. Artis, as General Partner of the Fund, and AWJ and Plaintiff, as limited partners of the Fund, entered into the operative LP Agreement, entitled Amended and Restated Agreement of Limited Partnership of Artis Clean Tech Partners (Institutional), L.P., effective as of November 1, 2011. The LP Agreement is governed by Delaware law. § 29.

49. The LP Agreement expressly provides that the balance of the Liquidating Capital Account established for any investor requesting a withdrawal from the Fund on or after December 31, 2011 is not included as part of the investor's regular Capital Account eligible to be withdrawn. Specifically, Section 9.3(d) of the LP Agreement provides (emphasis added):

> From time to time the Partnership may own Illiquid Securities that the General Partner believes should not be (i) sold to generate cash proceeds to fund Partner withdrawals, (ii) distributed in kind or (iii) contributed to a Liquidating Fund to facilitate Partner withdrawals. To address these situations, the General Partner may, *in its exclusive discretion*, establish a "Liquidating Capital Account" with respect to any Partner that requests withdrawal of all or any portion of its Capital Account balance. ***In this event, the General Partner may allocate such Partner's pro rata share of the applicable Illiquid Securities to that Liquidating Capital***

*Account as of the close of business on the withdrawal date*. The Liquidating Capital Account balance may not be withdrawn by that Partner under the normal withdrawal provisions described at the beginning of section 9.3(a) and that balance shall not be deemed part of that Partner's Capital Account. Such Partner's pro rata share of the applicable Illiquid Securities shall be based on the ratio of the amount that the Partner requests to be withdrawn on the applicable withdrawal date, including the applicable Illiquid Securities, to all Capital Account balances immediately prior to such withdrawal. *Such Partner's initial Liquidating Capital Account balance shall equal the value of such pro rata share of such Illiquid Securities on that date, and an equivalent amount shall be debited from that Partner's Capital Account balance. Thus, such Partner's Capital Account balance as of the withdrawal shall not include the transferred balance, which, as noted above, may not subsequently be withdrawn from the Partnership*. If any such Partner subsequently requests a withdrawal of additional amounts from its Capital Account when the Partnership continues to hold the applicable Illiquid Securities in the Partnership's regular Capital Account portfolio (that is, those Securities have not been allocated to one or more Liquidating Capital Accounts), that Partner shall be allocated additional shares of those Illiquid Securities to the same Liquidating Capital Account pursuant to the foregoing allocation methodology. The General Partner shall distribute the balance of each Liquidating Capital Account in cash or in kind (or both) when it deems appropriate less any contingencies that the General Partner identifies and elects to reserve for. Profits and Losses relating to the Illiquid Securities allocated to the Liquidating Capital Accounts shall be specially allocated to them, and not to the Capital Accounts, as provided in section 10.4(a). All other provisions of this Agreement shall be deemed amended to the extent the General Partner deems appropriate to incorporate Liquidating Capital Accounts, and the General Partner shall have discretion to apply these Liquidating Capital Account provisions as it deems appropriate.

50.     Consistent with Section 9.3(d), Section 5.33 of the LP Agreement provides that "the portion of a Limited Partner's Capital Account balance that is transferred to a Liquidating Capital Account when a Limited Partner withdraws capital from the Partnership (as described in section 9.3(d)) shall not be deemed withdrawn from the Partnership for purposes of applying these Unrecouped Loss reduction provisions or any other provisions of this Agreement."

51. Consistent with Section 9.3(d), Section 9.3(a)(1) of the LP Agreement provides that "the portion of a Limited Partner's Capital Account balance that is transferred to a Liquidating Capital Account when a Limited Partner withdraws capital shall not be deemed withdrawn for purposes of calculating the foregoing withdrawal fees.  Instead, any such amounts shall be deemed withdrawn when balances in a Liquidating Capital Account are distributed to that Limited Partner."

52. Section 9.3(a)(5) permits Artis to hold back funds pending auditors' review and requires prompt repayment following notification of overpayment.  Section 9.3(a)(5) provides:

> Subject to section 9.3(b), if a withdrawal exceeds ninety-five percent of the balance of a Limited Partner's Capital Account, such ninety-five percent shall be paid within thirty days after the applicable Permitted Withdrawal Date and the remainder, if any, of the withdrawal shall be paid as soon as the General Partner determines that it is reasonably practicable after the Partnership receives financial statements for the Fiscal Year in which the withdrawal occurs compiled, reviewed or audited by the Outside Accountants, ***but the total withdrawal paid may not exceed that Limited Partner's Capital Account balance, as shown by those financial statements (and such remainder shall not earn interest or be considered to be invested in the Partnership), and if the Outside Accountants determine that the amount paid by the Partnership exceeds the Capital Account balance, that Limited Partner shall forthwith, on demand by the General Partner, repay such excess to the Partnership in cash***.

53. Pursuant to Sections 12.1(b) and 12.1(m) of the LP Agreement, Artis has the power and authority to, among other things, "[e]nter into . . . assignments" and "[c]ollect amounts due to the Partnership, enforce the Partnership's rights, seek to recover compensation for injury or damage to the Partnership or to prevent such injury or damage through litigation or other means and engage and compensate lawyers, expert witnesses and others in connection therewith."

54. Pursuant to Section 9.3(d) of the LP Agreement, Artis instructed Goldman that a Liquidating Capital Account should be established with respect to AWJ after AWJ requested a full redemption of its Fund Capital Account balance, to contain AWJ's pro rata share of the illiquid Kior share holdings as of the close of business on the requested redemption date of March 31, 2012.

55. Pursuant to Section 9.3(d) of the LP Agreement, Goldman recorded the allocation of AWJ's pro rata share of the Fund's Kior share holdings to AWJ's Liquidating Capital Account as of the close of business on the requested redemption date of March 31, 2012, in the amount of $778,244.35. AWJ's Liquidating Capital Account was established before April 26, 2012, when Goldman admittedly distributed payment to AWJ in error, resulting in unjust enrichment of AWJ in the amount of $778,244.35, plus interest.

56. Pursuant to Section 9.3(d) of the LP Agreement, AWJ's Liquidating Capital Account balance in the amount of $778,244.35 cannot be deemed part of AWJ's Capital Account eligible for withdrawal and is not permitted to be withdrawn by AWJ under the normal withdrawal provisions applicable to regular Capital Accounts.

57. Pursuant to Section 9.3(a)(5), because the amount paid to AWJ was determined by Rothstein to have exceeded the balance of AWJ's Capital Account eligible for withdrawal, AWJ was required to repay the excess in cash forthwith following demand by Artis. Artis informed AWJ of Rothstein's finding and demanded repayment in its letter of September 17, 2013, but AWJ has continued to improperly retain the $778,244.35 overpayment, plus accrued interest, for more than a year since that notification and demand. Accordingly, and pursuant to Section 9.3(a)(5) of the LP Agreement, Artis has retained an audit holdback pending repayment by AWJ.

58. By withdrawing and continuing to improperly retain the $778,244.35 value of its Liquidating Capital Account, without the authorization or permission of Artis, in violation of the express withdrawal restrictions applicable to the Liquidating Capital Account as specified in the LP Agreement, and in violation of the excess withdrawal repayment requirement imposed by the LP Agreement, AWJ has breached, and continues to breach, the LP Agreement.

59. Section 31 of the LP Agreement provides that:

> If any dispute between or among any of the Partnership and the Partners or any of their respective Affiliates should result in litigation, the prevailing party or parties in such dispute shall be entitled to recover from the other party or parties all reasonable fees, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses, incurred by the prevailing party or parties in connection therewith, all of which shall be deemed to have accrued on the

commencement of such action and shall be paid whether or not such action is prosecuted to judgment. Any award, judgment or order entered in such action shall specifically provide for the recovery of attorneys' fees and costs incurred in enforcing such award or judgment and an award of prejudgment interest from the date of the breach at the maximum rate allowed by law. For the purposes of this section 31, (a) attorneys' fees shall include, without limitation, fees incurred in postaward or postjudgment motions, contempt proceedings, garnishment, levy, and debtor and third party examinations, discovery, and bankruptcy litigation, and (b) prevailing party shall mean the party that is determined in the proceeding to have prevailed or who prevails by dismissal, demurrer, default or otherwise.

60. As a result of its breach of the LP Agreement, AWJ has caused Plaintiff to suffer injury and damages, including attorneys' fees, by refusing to return the amount of $778,244.35, plus interest, it owed to Artis and the Fund, a debt that the Fund later assigned to Plaintiff after he stepped forward to cover the deficit to the Fund resulting from AWJ's intransigence. AWJ has known since at least May 1, 2012 that it is required to return those monies according to the terms of the LP Agreement. AWJ has knowingly misappropriated and unjustly deprived the Fund of valuable assets that the Fund was entitled to retain.

61. Effective June 30, 2014, the Fund assigned to Plaintiff its right, title, and interest in any cause of action against AWJ or any other party arising out of the overpayment to AWJ, including this cause of action for breach of contract.

**COUNT TWO: UNJUST ENRICHMENT**

62. Plaintiff hereby incorporates by reference paragraphs 1 through 61, above, as if fully set forth herein.

63. AWJ has been unjustly enriched at the Fund's and its investors' expense, including at the expense of Plaintiff, and it would be against equity and good conscience to allow AWJ to keep $778,244.35, plus interest, to which it is not entitled.

64. When AWJ received the $778,244.35 overpayment on April 26, 2012, that sum was required by the terms of the LP Agreement to remain in the Liquidated Capital Account and was not to be included in AWJ's redemption.

65. AWJ only received the $778,244.35 overpayment as the result of an acknowledged administrative error by the Fund's administrator Goldman, which promptly informed AWJ of the error and requested that the overpaid funds be returned to the Fund.  Despite the prompt notice and the clear error, AWJ refused to return the overpaid funds and for more than two years has been in possession of $778,244.35, plus interest, in funds which it has no right to possess.

66. The $778,244.35 that AWJ was overpaid should, under the terms of the LP Agreement, have remained with the Fund and under the management of the General Partner.

67. It would be against equity and good conscience to allow AWJ to continue to hold and use $778,244.35 in windfall funds that it received only as the result of an administrative error that Goldman promptly discovered and attempted to remedy, particularly after Plaintiff agreed to forgo his own personal distributions from the Fund in the amount of that overpayment to prevent any shortfall to the Fund and its remaining investors.  AWJ would have suffered no prejudice from returning the overpayment upon notice from Goldman three days after the payment was made, but by refusing to do so AWJ has inflicted and continues to inflict harm on the Fund and on its investors.

68. Effective June 30, 2014, the Fund assigned to Plaintiff its right, title, and interest in any cause of action against AWJ or any other party arising out of the overpayment to AWJ, including this cause of action for unjust enrichment.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. For judgment entered against AWJ and in favor of Plaintiff requiring AWJ to return the full amount of all monies, plus interest, that have been improperly withheld by AWJ.

2. For all available pre-judgment and post-judgment interest on the full amount of all monies that have been improperly withheld by AWJ.

3. For all damages according to proof resulting from AWJ's continuing improper withholding of monies belonging to the Fund.

4. For all available attorneys' fees and costs of suit incurred by Plaintiff in

1 | connection with this action.

2 |     5. For all other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: February 11, 2015

CHRISTOPHER G. GREEN
ROCKY C. TSAI
ANNE JOHNSON PALMER
ROPES & GRAY LLP


/s/ Rocky C. Tsai
ROCKY C. TSAI
Attorney for Plaintiff
STUART L. PETERSON

- 14 -

COMPLAINT